IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FREDDIE CARL SPRINKLE,

               Petitioner,

       vs.

THOMAS L. CAREY, Warden, California
State Prison, Solano,

               Respondent.

No. 2:05-cv-01783-JKS

MEMORANDUM DECISION

      Freddie Carl Sprinkle, a state prisoner appearing through counsel, filed a Petition for

Habeas Corpus Relief under 28 U.S.C. § 2254.  Sprinkle is currently in the custody of the

California Department of Corrections and Rehabilitation, incarcerated at the California State

Prison, Solano.  Respondent has answered, and Sprinkle has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

      In August 1987 Sprinkle was convicted upon a negotiated plea in the Lassen County

Superior Court of Murder in the Second Degree under California Penal Code § 187.[1]  The trial

court sentenced Sprinkle to an indeterminate prison term of 15 years to life in accordance with

the plea agreement.  Sprinkle does not challenge his conviction or sentence in his Petition to this

Court.

---

[1] At his jury trial, the jury acquitted Sprinkle of first degree murder, but deadlocked on
the second degree murder charge.  Sprinkle then agreed to enter a guilty plea to second degree
murder, and all other charges were dismissed.

In April 2002 Sprinkle appeared for a parole suitability hearing before the Board of Prison Terms ("Board"), which found Sprinkle suitable for parole.  In September 2002 the Governor reversed the decision of the Board.  In May 2003 Sprinkle again appeared before the Board for a parole suitability hearing.  The Board denied Sprinkle parole for a period of one year. In June 2003 Sprinkle filed a petition for habeas relief in the San Joaquin County Superior Court, challenging both the September 2002 reversal by the Governor and the May 2003 decision of the Board denying him parole.  The San Joaquin County Superior Court denied the petition in an unreported, reasoned decision.  The California Court of Appeal, Third Appellate District, summarily denied Sprinkle's petition for habeas relief without opinion or citation to authority. Sprinkle then filed a petition for habeas relief in the California Supreme Court in February 2004. While Sprinkle's habeas petition was pending before the California Supreme Court, Sprinkle reappeared before the Board in June 2004, which again denied Sprinkle parole for a period of one year.  In October 2004 Sprinkle filed a petition for habeas relief in the California Supreme Court challenging the Board's June 2004 action, requesting that it be consolidated with the petition filed in February 2004.  The California Supreme Court summarily denied both petitions without opinion or citation to authority on July 20, 2005.  Sprinkle timely filed his Petition for relief in this Court on September 7, 2005.

Sprinkle moved for summary judgment on his Petition in this Court, and the Magistrate Judge issued Findings and Recommendations recommending that the Petition be granted.  On December 5, 2008, while the objection and response to the Magistrate Judge's Findings and Recommendations were pending, this Court stayed this proceeding pending the *en banc* decision

by the Ninth Circuit in *Hayward v. Marshall*.[2]  On September 17, 2010, after the Ninth Circuit

issued its *en banc* decision in *Hayward*, this Court ordered the parties to submit supplemental

briefing addressing "any relevant factors pertaining to Petitioner's ongoing incarceration since

2007."[3]  The parties responded to that Order, and this Court, rejecting the Findings and

Recommendations of the Magistrate Judge, denied Sprinkle's motion for summary judgment.

## II.  GROUNDS PRESENTED/DEFENSES

In his Petition, Sprinkle raises three grounds:  (1) the Governor's 2002 reversal of the

Board's decision violated the *Ex Post Facto* Clause; (2) the refusal to grant Sprinkle parole

violates due process and constitutes a denial of equal protection in that (a) the Governor's action

violated the plea agreement, (b) the Governor's action violated California statutes and

regulations, and (c) the Governor's 2002 reversal and the Board's 2003 decision to deny parole

for one year were biased and unsupported by substantial evidence; and (3) the State's refusal to

grant Sprinkle parole constitutes cruel and unusual punishment.  Respondent does not assert any

affirmative defense.[4]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

---

[2] *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc), *abrogated by Swarthout v. Cooke*, 131 S. Ct. 859 (2011).

[3] Docket No. 39 (text only).

[4] *See* Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[9]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[10]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

---

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412 (alteration added).

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

4

the trial with unfairness as to make the resulting conviction a denial of due process.'"[11]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[12]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[14]

---

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[14] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

In applying this standard, this Court reviews the last reasoned decision by the state court.[15]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[16]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[17]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[18]  This is considered as the functional equivalent of the appeal process.[19]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

---

[15] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . ").

[16] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[17] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[18] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[19] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

by clear and convincing evidence.[20]  This presumption applies to state-trial courts and appellate courts alike.[21]

To the extent that Sprinkle raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.[22]  A petitioner "may not, however, transform a state-law issue into a federal one merely by asserting a violation of due process.[23]  "[The Supreme Court has] long recognized that a mere error of state law is not a denial of due process."[24]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[25]  Furthermore, "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[26]

---

[20] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing § 2254(e)(1)).

[21] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

[22] *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business.").

[23] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[24] *Cooke*, 131 S. Ct. at 863 (2011) (internal quotation marks and citations omitted).

[25] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[26] *Smith v. Philips*, 455 U.S. 209, 221 (1982) (citations omitted); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several States." (quoting *Dickerson v. United States*, 530 U.S. 428,

A state court is not required to give reasons before its decision can be deemed to be "adjudicated on the merits."[27]  When there is no reasoned state-court decision denying an issue presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[28] Where the presumption applies, this Court must perform an independent review of the record to ascertain whether the state-court decision was objectively unreasonable.[29]  In conducting an independent review of the record, this Court presumes that the relevant state-court decision rested on federal grounds,[30] giving that presumed decision the same deference as a reasoned decision.[31]  The scope of this review is for clear error of the state-court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . . Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[32]

---

438 (2000))).

[27] *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).

[28] *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

[29] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam)).

[30] *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991) ("The presumption at present applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision."); *see also Harris*, 489 U.S. at 263.

[31] *Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[32] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (citation omitted). *But cf. Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) ("Our standard of review is not

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[33]

## IV.  DISCUSSION

Sprinkle raised the issues presented to this Court in his petitions for habeas relief in the state courts.  With respect to Sprinkle's challenge of the 2002 gubernatorial reversal and the 2003 decision of the Board, the only reasoned decision is that of the San Joaquin County Superior Court.  Sprinkle challenged the 2004 Board denial solely in the California Supreme Court, which summarily denied Sprinkle's petition.  Thus, there is no reasoned state court decision addressing the 2004 decision of the Board.

Ground 1:  *Ex Post Facto Clause*

Sprinkle argues that the 1988 amendment to California Penal Code § 3041.2 adding the provision granting the Governor veto power over decisions of the Board, which became effective after Sprinkle's conviction, violates the *Ex Post Facto* Clause of the Constitution.  The San Joaquin County Superior Court rejected Sprinkle's argument "for the reasons enunciated in In re Rosenkrantz (2002) 29 C.4th 616 [59 P.3d 174]."[34]

In *Rosenkrantz*, the California Supreme Court rejected an *ex post facto* challenge to the application of the 1988 amendment adding gubernatorial review to § 3041.2, holding:

---

controlled by *Delgado v. Lewis* . . . .  There, we held that where a state court provides no rationale for a decision, a habeas court does not apply de novo review, but instead determines whether the state decision was objectively unreasonable based on its independent reading of the record.  Here, however, the state court was not silent as to its reasoning . . . .  Therefore, we review de novo whether Lewis waived his right to conflict free counsel . . . .").

[33] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[34] Docket 29-8, at 3 (alteration added).

9

Furthermore, article V, section 8(b), did not make any changes in the substantive standard that governs the determination of petitioner's suitability for parole; indeed, article V, section 8(b), explicitly provides that the Governor, in reviewing the parole board's decision, is to apply *the same factors as the Board.* The only change effected by article V, section 8(b), is the institution of an additional level of discretionary review of the Board's decision granting or denying parole, resulting merely in a change in the identity of the entity or official within the executive branch that may make the ultimate decision on parole. Prior to the adoption of article V, section 8(b), the only reasonable expectation that an individual in petitioner's position would have had with regard to punishment was that he or she would receive a sentence of 15 years to life imprisonment and that, after serving the minimum term, he or she would be entitled to have a public official exercise discretion with regard to his or her suitability for parole under then existing standards. Such an individual in petitioner's position had no reasonable expectation regarding the identity of the person or persons who would exercise discretion in evaluating his or her suitability for parole, or that the person or persons who would make such a decision would not change over time. Accordingly, under the ordinary meaning of the controlling language in *Collins,* it appears clear that the application of the procedure set forth in article V, section 8(b), to an individual who committed a criminal offense prior to its enactment does not *increase the punishment* for such crime.[35]

In *Garner*, the Supreme Court made clear that retroactive changes to a state's parole laws may, in some instances, violate the *Ex Post Facto* Clause.[36] In order to establish an *ex post facto* violation based on a state's retroactive application of a parole statute, a prisoner must demonstrate that the new statute "creates a significant risk of prolonging [the prisoner's] incarceration."[37] A change in the law that does nothing more than alter the method of granting parole under identical substantive standards, however, does not implicate the *Ex Post Facto* Clause.[38] Likewise, the Supreme Court has found that there was no *ex post facto* violation where

---

[35] *In re Rosenkrantz*, 59 P.3d 174, 193 (Cal. 2002).

[36] *Garner v. Jones*, 529 U.S. 244, 250 (2000) (citing *Lynce v. Mathis*, 519 U.S. 433, 445-46 (1997)).

[37] *Id*. at 251 (alteration added).

[38] *See Cal. Dept. of Corr. v. Morales*, 514 U.S. 499, 507-14 (1995) (holding that a change allowing the Board to increase the time between reviews did not violate the *Ex Post Facto*

the new law allowed for higher court review of intermediate-court decisions, even though the

defendant would have been entitled to a final intermediate-court decision at the time he

committed his crime.[39]

    *Ex post facto* analysis of a facially neutral parole law requires a case-specific, fact-

intensive analysis regarding the risk posed by the law to the particular prisoner challenging its

application.[40]  The Supreme Court has also noted that the possibility of immediate release is

largely "theoretical" in that in many cases a prisoner's release date comes at least several years

after a finding of suitability.[41]

    In this case, Sprinkle was never granted parole under the law as it existed prior to its 1988

amendment.  The Ninth Circuit has rejected an *ex post facto* challenge to California Penal Code

§ 3041.2 "because the BPT's parole decision is not final until after the expiration of the thirty-

day gubernatorial review period, [and thus] it cannot be said with certainty that the BPT would

have granted [Sprinkle's] parole had it possessed the final review authority."[42]  Sprinkle's

---

Clause); *Garner*, 529 U.S. at 250 (noting that the California law in question in *Morales* did not modify the statutory punishment imposed for any particular offense or alter the standards for determining parole eligibility).

[39] *Mallett v. North Carolina*, 181 U.S. 589, 592- 97 (1901); *see Collins v. Youngblood*, 497 U.S. 37, 45 (1990) (discussing the differences between changes in procedures by which a criminal case is adjudicated, which is generally not subject to an *ex post facto* limitation, and changes in the substantive law of crimes); *Dobbert v. Florida*, 432 U.S. 282, 292-94 (1977) (holding that a change in state law that gave the trial court and the state's highest court, rather than the jury, the final say on whether the death penalty was to be imposed in a particular case, could be applied retroactively to a defendant who committed his offense prior to the enactment of the new provision, without violating the *Ex Post Facto* Clause).

[40] *See, e.g., Garner*, 529 U.S. at 255 ("[R]espondent must show that as applied to *his own* sentence the law created a significant risk of increasing his punishment." (emphasis added)).

[41] *Morales*, 514 U.S. at 513 (citing *In re Jackson*, 39 Cal.3d 464, 474 (1985)).

[42] *Johnson v. Gomez*, 92 F.3d 964, 967 (9th Cir. 1996) (alterations added).

reliance on the Ninth Circuit's decision in *Brown*[43] is misplaced.  In *Brown*, the change held to constitute an *ex post facto* violation was a change to the standard to be applied, not the procedure to be followed.[44]  Under § 3041.2, the Governor must apply the same substantive standards as applied by the Board.  In *Johnson*, the Ninth Circuit noted that this characteristic could not differentiate the change in the law in § 3041.2 from the change in the law in *Mallett*.  Contrary to Sprinkle's contention, *Garner* did not undermine either the rationale or the holding in *Johnson*.[45]

In *Rosenkrantz*, the California Supreme Court considered, extensively analyzed, and applied *Mallett*, *Morales*, *Youngblood*, *Dobbert*, and *Garner* in reaching its decision.[46]  In his petition for habeas relief in the California Supreme Court challenging the 2002 gubernatorial reversal,[47] Sprinkle requested that the Court reconsider its decision in *Rosenkrantz*, arguing that the majority in *Rosenkrantz* improperly applied *Garner*.[48]  As noted above, the California Supreme Court summarily denied Sprinkle's petition.  In his Traverse, Sprinkle urges this Court to similarly determine that the *Rosenkrantz* majority erred in its interpretation and application of *Morales* and *Garner*; thus, he argues that this Court should accept the view of the two dissenting justices in *Rosenkrantz*.[49]

---

[43] *Brown v Palmateer*, 379 F.3d 1089 (9th Cir. 2004).

[44] *Id.* at 1094-96.

[45] The California Supreme Court reached the same conclusion in *In re Rosenkrantz*, 59 P.3d 174, 196 (Cal. 2002).

[46] *Id.* at 194-99 (citations omitted).

[47] Sprinkle acknowledges that the lower California courts were bound by *Rosenkrantz*. *See Auto Equity Sales v. Superior Court*, 369 P.2d 937, 939-40 (1962).

[48] Docket No. 15-6, at 82-86.

[49] This Court notes that the Supreme Court denied *certiorari* in *Rosenkrantz*. *Rosenkrantz v. California*, 538 U.S. 980 (2003) (Mem).  That denial, however, "imports no

In his Petition to this Court, Sprinkle contends that empirical data proves that, as applied in general and to himself in particular, § 3041.2 results in a longer period of incarceration.[50] Thus, according to Sprinkle, the amendment to § 3041.2, as applied to him, increased the risk of a longer period of incarceration thereby satisfying *Garner*.  The fatal flaw in Sprinkle's argument is that, although in his Petition to this Court Sprinkle presents some evidence in support of his position, in his petition to the California Supreme Court Sprinkle neither argued nor presented any factual support that, *as applied to him*, § 3041.2 resulted in a longer period of incarceration.

Under 28 U.S.C.  § 2254(d)(1) review by this Court is limited to the record that was before the state court that adjudicated the claim on the merits.[51]  "[T]he petitioner must . . . provide the state court with the operative facts, that is, 'all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies.'"[52]  "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."[53]  Indeed, "if the state-court decision 'identifies

---

expression of opinion upon the merits of the case."  *Teague v. Lane*, 489 U.S. 288, 296 (1989) (O'Connor, J., with Chief Justice and two Justices concurring, and three Justices concurring in part and concurring in the judgment) (quoting *United States v. Carver*, 260 U.S. 482, 490 (1923) (Holmes, J.)).

[50] Citing excerpts from the two dissenting justices in *Rosenkrantz.*

[51] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[52] *Davis v. Silva,* 511 F.3d 1005, 1009 (9th Cir. 2008) (first alteration added) (quoting *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir. 1958)).

[53] *Williams*, 529 U.S. at 437 (quoted with approval in *Pinholster*, 131 S. Ct. at 1401); *see Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (noting that the basic structure of federal habeas jurisdiction is designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on

the correct governing legal principle' in effect at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'"[54]  As the Supreme Court noted, "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court."[55]  Sprinkle has failed to meet this standard.

Sprinkle's argument that the Governor does not in fact apply the same standards in practice also fails.  Whether or not the Governor's decision properly applies the standards of California law is strictly a question of California law, which is for the California Courts to correct, not this Court in a federal habeas proceeding.[56]  Sprinkle's argument is akin to an abuse of discretion argument.  Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation,[57] the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[58]

---

the road' for what will later be the determinative federal habeas hearing.").

[54] *Pinholster*, 131 S. Ct. at 1399 (quoting *Williams*, 529 U.S. at 405).

[55] *Id.*

[56] *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business.").

[57] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc) ("A particular abuse of discretion by a state court may amount also to a violation of the Constitution, but not every state court abuse of discretion has the same effect.").

[58] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under

In light of *Pinholster*, *Garner*, *Morales*, *Mallett*, *Youngblood*, and *Johnson*, this Court cannot say that the decisions of the California courts in this case, which relied on *Rosenkrantz*, were  "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time those state courts rendered their decisions or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[59]  Sprinkle is not entitled to relief under his first ground.

Ground 2:  Due Process/Equal Protection

*Breach of Plea Agreement*.  Sprinkle contends that the plea bargain promised him and it was his reasonable expectation that he would be released to parole once the Board found him suitable for parole.  Sprinkle argues that the Governor's action under § 3041.2 violated that promise and upset his settled expectation.  Sprinkle does not point to anything in the record that might indicate he received such a "promise."  Instead, Sprinkle relies on the fact that the law at the time he accepted the plea offer provided that after he served the minimum amount of time required under his sentence, he would be released to parole if the Board found him suitable.  The San Joaquin County Superior Court, characterizing this argument as just another way of arguing *ex post facto*, rejected it for the reasons enunciated in *Rosenkrantz*.[60]

---

AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (citing 28 U.S.C. § 2254(d)(1))).

[59] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63,70-75 (2003) (explaining this standard).

[60] Docket 29-8, at 3.

That a plea agreement is a contract that must be honored by the state is well settled.[61]   In this case, however, Sprinkle reads his "contract" too broadly.  The proper interpretation and effect of the agreement between the State of California and Sprinkle in this case is a matter governed by California contract law.[62]   What Sprinkle received in exchange for his guilty plea was a sentence of fifteen years to life, with a *possibility* of parole at some point after he had served his minimum term.   Under California law, there is no guarantee of parole after a specified period of time, only a guarantee that a prisoner will be considered for parole and granted parole *only if*, in the exercise of the discretion of the Board and/or the Governor applying factors specified by regulations, he or she is found to be suitable for parole.[63]   Sprinkle does not allege that there was any promise, actual or implied, in the plea offer itself of when or under what terms or conditions he might be granted parole, or, for that matter, that he would be granted parole at all at any time.   Sprinkle does not argue that any such express or necessarily implied promise was

---

[61] *See Santobello v. New York*, 404 U.S. 257, 262-63 (1971) ("On the record, petitioner 'bargained' and negotiated for a particular plea in order to secure a dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor.  It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial.").

[62] *See Ricketts v. Adamson*, 483 U.S. 1, 7 n.3 (1987) ("We will not second-guess the Arizona Supreme Court's construction of the language of the plea agreement. While we assess independently the plea agreement's effect on respondent's double jeopardy rights, the construction of the plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law, and we will not disturb the Arizona Supreme Court's reasonableness disposition of those issues.").

[63] *Cf. In re Lowe*, 31 Cal. Rptr. 3d 1, 13 (Ct. App. 2005) (holding that when a defendant enters a guilty plea, he has "no reasonable expectation regarding the identity of the person or persons who would exercise discretion in evaluating his suitability for parole, or that the person or persons would not change over time" (citing *In re Rosenkrantz*, 59 P.3d 174, 193 (Cal. 2002))).

made as part of the plea offer.  Instead, Sprinkle argues that the law at the time did not provide

for gubernatorial vetoes of Board decisions.  "A plea agreement violation claim depends upon the

actual terms of the agreement, not the subjective understanding of the defendant . . . ."[64]  This

Court agrees with the San Joaquin County Superior Court that Sprinkle's breach of the plea

agreement argument, which is based solely on state law existing at the time of his plea, is just

another way of arguing an *ex post facto* violation.  It fails for the same reason as did his first

ground.

     *Contrary to California Law/Bias*.  Sprinkle argues that the California parole system, as

administered by the Governor and the Board in a manner that violates § 3041, arbitrarily

establishes a "no parole" policy in violation of both the California statutes and the Federal

Constitution.  Sprinkle further argues that the action of the Governor represented a bias against

granting parole to "lifers" under any circumstances, and that, as appointees of the Governor, the

Board reflects and implements this bias.  The San Joaquin County Superior Court did not address

this issue in its decision.  Thus, as discussed above, this Court must conduct an independent

review of the record to determine whether the state court's application of federal law was

objectively unreasonable.[65]  In conducting this independent review of the record, this Court

---

     [64] *In re Honesto*, 29 Cal. Rptr. 3d 653, 660 (Ct. App. 2005).

     [65] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam)); *See also supra* notes 28-32 and accompanying text.

presumes that the state-court decision rested on federal grounds,[66] giving this presumed decision the same deference as a reasoned decision.[67]

   First, Sprinkle's argument that the Board and Governor are misapplying California statutory and regulatory law is beyond the purview of this Court in a federal habeas proceeding.[68] Second, it is well established by Supreme Court precedent that there is no constitutional or inherent right of a convicted person to be conditionally released on parole before expiration of a sentence.[69]  In the parole setting, due process requires that the Board review the inmate's record, accord the inmate a personal interview before the Board, and provide a statement of the reasons for denial.[70]  California law clearly satisfies this standard.[71]  It is axiomatic that a "fair trial in a

---

   [66] *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991) ("The presumption at present applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision."); *see also Harris*, 489 U.S. at 263; *see also supra* notes 28-32 and accompanying text.

   [67] *Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *see also supra* notes 28-32 and accompanying text.

   [68] *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business.").

   [69] *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979).

   [70] *See id*. at 15.

   [71] *Cooke*, 131 S. Ct. at 862 ("When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures.  In the context of parole, we have held that the procedures required are minimal.  In *Greenholtz*, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." (citing *Greenholtz*, 442 U.S. at 16)).

fair tribunal is a basic requirement of due process," i.e., an absence of actual bias.[72]  This

principle applies equally to adjudicative administrative agencies as well.[73]  Sprinkle does not

allege that the Board or the Governor are biased or prejudiced against him personally, but as a

member of an identifiable class, i.e., those serving life terms, an equal protection argument.[74]

As an equal protection question, Sprinkle's argument also fails.  That the Equal

Protection Clause of the Fourteenth Amendment protects a person against being treated

differently from others similarly situated is well settled.[75]  That rule does not, however, bar all

differences in treatment for those who may appear to be similarly situated.  The general rule is

that legislation is presumed to be valid provided that the difference is rationally related to a

legitimate state interest.[76]  Sprinkle has not cited any case holding that "lifers" are a class

protected by the Equal Protection Clause of the Fourteenth Amendment, and independent

research by this Court has not found any such case.  Nor has Sprinkle advanced any argument

that treating "lifers," whose crimes have been determined to be more serious than those crimes

for which a lesser sentence is prescribed, is somehow arbitrary or capricious.  Indeed, the

California legislature in prescribing a more serve punishment has determined that those who

---

[72] *In re Murchison*, 349 U.S. 133, 136 (1955); *see Bracey v. Gramley*, 520 U.S. 899, 904-05 (1997) (citing *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)).

[73] *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973).

[74] The California Court of Appeal rejected the argument that Governor Davis had a blanket policy against parole for "lifers."  *In re Morrall*, 125 Cal. Rptr. 2d 391, 402-03 (Ct. App. 2002), *review denied.*  Although Gray Davis is no longer Governor, the Supplemental Pleading submitted by Sprinkle indicates that his successor has continued the "no-parole" policy.  Therefore, that issue is not necessarily moot.

[75] *See, e.g., City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (2003) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

[76] *Id.* at 440.

19

commit certain crimes are to be treated differently from those who may have committed other less serious crimes.  In short, to accept Sprinkle's argument requires this Court to find that the California legislature, in prescribing an indeterminate term for second degree murder, with the upper term being life, denied him equal protection.  For this proposition, not only is there no authority, but it is well established that the punishment for crimes "as a general matter, is 'properly within the province of the legislatures, not courts.'"[77]

*Sufficiency of the Evidence*.  Sprinkle argues that the 2002 gubernatorial decision and the 2003 Board decision were not supported by substantial evidence.  After briefing in this case was completed, including supplemental briefing, the United States Supreme Court decided *Cooke*.[78] This Court must decide the case on the law as it exists at the time this Court renders its decision and, if controlling law changes while the case is pending, this Court applies the law as changed.[79] Thus, although it represents a change in controlling law, *Cooke* forecloses Sprinkle's "some evidence" argument.

Generally, when a higher court issues new controlling authority after briefing is complete, this Court requests further briefing from the parties addressing the new authority.  The Supreme Court decision in *Cooke* is so clear that further briefing would unnecessarily prolong this case, which has already been pending nearly six years, without any possibility of changing the result.

---

[77] *Hamelin v. Michigan*, 501 U.S. 957, 998 (1991) (Kennedy, J. concurring) (quoting *Rummell v. Estelle*, 445 U.S. 263, 275-76 (1980)); *see Gore v. United States*, 357 U.S. 386, 393 (1958) ("Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, . . . these are peculiarly questions of legislative policy." (citation omitted)).

[78] *Swarthout v. Cooke*, 131 S. Ct. 859, (2011).

[79] *See Thorpe v. Hous. Authority of City of Durham*, 393 U.S. 268, 281-82 (1969); *Lambert v. Blodgett*, 393 F.3d 943, 973 n.21 (9th Cir. 2004).

The Supreme Court has limited federal habeas review to the procedures followed by the board and the governor, and defined with care what it meant by the applicable procedures.  No longer may this Court consider how the California courts applied California law concerning parole standards and procedures set by the State.[80]  Under these circumstances further briefing would not aid the Court in reaching a decision.

That a California prisoner has a liberty interest in parole protected by the procedural safeguards of the Due Process Clause of the Fourteenth Amendment is settled.[81]  Because the only federal right at issue in this case is procedural, the relevant inquiry is whether Sprinkle received due process.[82]  The Constitution only requires that a prisoner be allowed an opportunity to be heard and be provided with a statement of the reasons why a parole is denied, nothing more.[83]  Sprinkle contends that the 2002 decision of the Governor and 2003 decision of the Board were unsupported by some evidence, a requirement of California law.[84]  In federal habeas review, "it is of no federal concern . . . whether California's 'some evidence' rule of judicial

---

[80] *See* Cooke, 131 S. Ct. at 863 (2011) ("[T]he responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business."); *see also Styre v. Adams*, 645 F.3d 1106, 1108 (9th Cir. 2011); *Miller v. Oregon Bd. of Parole and Post Prison Supervision*, 642 F.3d 711, 716-17 (9th Cir. 2011); *Pearson v. Muntz*, 639 F.3d 1185, 1191 (9th Cir. 2011).

[81] *Hayward v. Marshall*, 603 F.3d 546, 561-64 (9th Cir. 2010) (en banc), *overruled sub silentio on another point by Cooke*, 131 S. Ct. 859.

[82] *See Cooke*, 131 S. Ct. at 861.

[83] *Id*. at 862 (citing *Greenholtz*, 442 U.S. at 16).

[84] *See generally In re Lawrence*, 190 P.3d 535 (Cal. 2008) (discussing California's some evidence standard in the context of parole decisions of the Board and the Governor); *In re Shaputis*, 190 P.3d 573 (Cal. 2008) (same).

review (a procedure beyond what the Constitution demands) was correctly applied."[85]  California prisoners are allowed to speak at their parole hearings and to contest the evidence against them, are afforded access to their records in advance, and are notified of the reasons why parole is denied.  That is all that due process requires.[86]  "'Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.'"[87]  Sprinkle has failed to establish a wrong of constitutional dimension.

Sprinkle is not entitled to relief on any of the three bases underlying his second ground.

Ground 3:  Cruel and Unusual Punishment

Sprinkle argues that the alleged administrative conversion of his sentence to a sentence of life imprisonment constitutes a violation of the Eighth Amendment's prohibition of cruel and unusual punishment.  That the Eighth Amendment is made applicable against the states by the Fourteenth Amendment is well established.[88]  In order to prevail on this issue, however, Sprinkle must establish that a life sentence without the possibility of parole for second degree murder

---

[85] *Cooke*, 131 S. Ct. at 863 (first alteration added).

[86] *Id.* at 131 S. Ct. at 862.

[87] *Smith v. Philips*, 455 U.S. 209, 221 (1982) (citing *Chandler v. Florida*, 449 U.S. 560, 570, 582-83 (1981); *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several States." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

[88] *See Furman v. Georgia*, 408 U.S. 238, 239 (1972) (per curiam) ("The Court holds that the imposition and carrying out of the death penalty in these cases constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments."); *Robinson v. California*, 370 U.S. 660, 666-67 (1962) ("We hold that a state law which imprisons a person thus afflicted as a criminal, even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment").

constitutes a violation of the Eighth Amendment proscription on cruel and unusual punishment. Sprinkle has cited no authority to support this theory.  Indeed, Supreme Court authority is clear that life without the possibility of parole does not violate the Eighth Amendment's prohibition of cruel and unusual punishment.[89]  Sprinkle is not entitled to relief under his third ground.

## V.  CONCLUSION AND ORDER

Sprinkle is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[90]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[91]

The Clerk of the Court is to enter judgment accordingly.

Dated: November 9, 2011.

    /s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[89] *See Hamelin v. Michigan*, 501 U.S. 957, 998 (1991) (upholding against an Eighth Amendment challenge a mandatory life sentence without the possibility of parole upon conviction for possession of more than 650 grams of cocaine  without consideration of mitigating factors, such as the fact that the defendant had no prior felony convictions).  *See generally Solem v. Helm*, 463 U.S. 277 (1983) (upholding a sentence of life without the possibility of parole upon "conviction of uttering a no account check for $100" based on a criminal history of seven nonviolent felonies).

[90] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[91] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.